738 F.Supp. 1262 (1990)
CONTICO INTERNATIONAL, INC., Plaintiff,
v.
LOCAL 160, LEATHER GOODS, PLASTICS AND NOVELTY WORKERS, AFL-CIO, Defendant.
No. 89-1861 C (5).
United States District Court, E.D. Missouri, E.D.
June 4, 1990.
James N. Foster Jr., Kevin Lorenz, McMahon, Berger, Hanna, Linihan, Cody & McCarthy, St. Louis, Mo., for plaintiff.
Charles R. Oldham, St. Louis, Mo., for defendant.

MEMORANDUM
LIMBAUGH, District Judge.
Plaintiff Contico filed a complaint in the instant matter requesting vacation of the Arbitration Award issued by Arbitrator Thomas A. Cipolla with respect to the discharge of Grievant Donald Clay. Grievant Clay was employed by plaintiff as a utility worker and was discharged by the Company for allegedly sleeping on the job. Donald Clay filed a grievance claiming that the discharge was not for cause as required under Article 7 of the Collective Bargaining Agreement and requested reinstatement with back pay. The grievance proceeded to arbitration and a decision was rendered setting aside the discharge of grievant, suspending him for thirty days and reinstating him to his job with back pay. This matter is presently before the *1263 Court on plaintiff's and defendant's cross motions for summary judgment.
Courts have recognized that summary judgment is a harsh remedy which the courts should only grant when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Life Ins. v. Null, 554 F.2d 896, 901 (8th Cir.1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." City of Mt. Pleasant, Iowa v. Assoc. Elec. Coop., Inc., 838 F.2d 268 (8th Cir.1988). Pursuant to Federal Rule of Civil Procedure 56(c), a district court may grant a motion for summary judgment if all the information before it shows that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). With these principles in mind the Court turns to an examination of the facts and finds that no genuine issues of material fact exist. The Court should therefore enter judgment as a matter of law.
Plaintiff Contico is a corporation that manufactures plastic moldings, and maintains a facility in Hazelwood, Missouri. Defendant Union, Local 160, is a labor organization engaged in the representation of its members employed by plaintiff in the matters of collective bargaining. Plaintiff and defendant are parties to a collective bargaining agreement which became effective on December 22, 1987, and remains in effect until December 22, 1990.
The collective bargaining agreement between the parties provides, inter alia:
ARTICLE 7
MANAGEMENT PREROGATIVES
The management of the Company and the direction of its working forces, including but not limited to the right to hire, discipline, suspend or discharge for cause, the right to transfer employees, the right to relieve employees from duty because of lack of work or for other legitimate reasons, the right to establish rules governing all or any department, the right to fix wages, work standards, select hours of work and work procedure not in conflict with the terms of this Agreement, are vested exclusively in the Company. This authority will not be used for the purpose of discriminating against any members of the Union because of Union activities.
. . . . .
ARTICLE 12
GRIEVANCE PROCEDURES
It is the policy of the Company to allow employees a reasonable opportunity to present any request or complaint to supervision.... It is their objective to see that the matter is treated fairly.
. . . . .
Section 5.
(a) ... [T]he decision of this arbitrator shall be final and binding upon both parties. On all questions concerning arbitration, the arbitration rules of the American Arbitration Association shall govern.
. . . . .
c) The function of the arbitrator shall be of a judicial rather than legislative nature. He shall not have power to add to, subtract from, ignore or modify in any way any of the terms and conditions of this Agreement. His decision shall not go beyond what is necessary for the interpretation and application of this Agreement or the obligation of the parties set forth in this Agreement. No decision shall decide issues not directly involved in the case.
. . . . .
ARTICLE 23
MISCELLANEOUS
. . . . .

Section 3. The Company has the right to establish or amend existing *1264 work rules to accommodate the orderly and efficient operation of its facilities. The Company agrees to submit in writing for the Union and all employees all future changes or additions to the work rules at least ten (10) work days before the effective date of said work rules. Without the Company waiving any of its rights hereunder, the Company agrees to meet with the Union upon the Union's receipt of the notice of any proposed changes in work rules. However, such discussions shall not prevent the proposed implementation from occurring within ten (10) days of the notice provided by the company. Work rules shall be posted in conspicuous areas available to all employees covered by this Agreement. No work rule shall be in conflict with any terms of this Agreement.
Plaintiff contractually maintained the following work rule, referenced as Schedule B, Rule 18, during all times pertinent hereto: "Any violation of the following work rules will lead to automatic termination of employment: 18. Sleeping on the job during scheduled work hours."
Donald Clay, the Grievant, was employed by plaintiff from June 15, 1983 to September 30, 1988. Clay received a copy of plaintiffs Disciplinary Action Policy and Work Rules when he was hired, which included Schedule B, Rule 18. On Saturday, September 24, 1988, plaintiff's facility experienced a power outage. The employees were gathered by plaintiff's supervisors and all but a few were sent home. Because the Grievant was the only utility worker on duty that day, he was directed to remain on the premises and perform various tasks. He was specifically retained on the premises because of his abilities to help get the machines running again when the power was restored. During the power outage, the Grievant was found sleeping on the job. Terry Schoonover, production superintendent, was informed of the incident on the following Monday. Schoonover conducted an investigation, and by Friday it was decided that the Grievant did in fact sleep during work hours. Consistent with company policy, Schoonover discharged the Grievant.
Defendant Union demanded that Grievant Clay's discharge be submitted to an impartial arbitrator for determination. Pursuant to the terms of the Collective Bargaining Agreement, the parties selected Arbitrator Thomas A. Cipolla through the Federal Mediation and Conciliation Service. On June 22, 1989 and June 30, 1989, Arbitrator Cipolla heard the evidence, heard argument, and received the exhibits of both parties. Both parties then submitted briefs to the Arbitrator.
There is a dispute as to whether any specific issue was placed before the Arbitrator at the arbitration proceeding. Plaintiff contends that the following issue was placed before the Arbitrator: "Was the Company prohibited from discharging Donald Clay for sleeping on the job pursuant to the consistent application of its disciplinary procedures and policies?" Defendant contends that the parties agreed prior to the hearing that the issue could be framed by the Arbitrator. The Arbitrator's Award set forth the issue as "Was the Grievant discharged for `cause'? If not, what is the proper remedy?" The Arbitrator's issue parallels that of the plaintiff. Thus, the issue of whether a specific issue was framed for the arbitrator is moot, and otherwise immaterial to the resolution of the instant summary judgment motions.
On September 9, 1989, Arbitrator Cipolla issued his opinion with respect to the issue of the discharge determining that plaintiff had erred in terminating the grievant from employment. In particular, the Award specifies:
The first issue to be determined is whether or not the Grievant is guilty of any misconduct. The Company contends that the Grievant was asleep. The Grievant contends that smoke and/or fumes in the plant caused his eyes to burn and that he was resting his eyes when he was discovered by the Company's two supervisors. Thus, a credibility issue has arisen. The Company supervisors testified that they called out for the Grievant. Foreman, Jim Distler also testified that *1265 he whistled for the Grievant in the plant that was then shutdown and quiet because of the electrical outage. At the hearing he demonstrated his whistling ability and, certainly as to the volume of his whistle, he is incredibly talented. Eventually, when the Grievant's tow-motor was spotted, Distler drove over on his tow-motor and Supervisor, [sic] Smith followed him over to the location. Upon arriving at the Grievant's location, the Grievant remained oblivious to their presence. Then Distler dropped the forks on his tow-motor (or on the tow-motor of the Grievant according to Smith) and the Grievant still did not respond. It is only when Distler honked the horn on the tow-motor of the Grievant, that the Grievant finally responded. His subsequent actions as described by said Company supervisors indicated those actions normally associated with waking up from sleep. Finally, the Grievant told then that he was tired. In terms of the character of the testimony, this version seems more probable than that of the Grievant, namely, that he was resting his eyes because of smoke or fumes that were causing his eyes to burn and that he was thinking or daydreaming about whether he should go to the doctor or file any complaints with the Company as being the reason he did [not] [sic] pay any attention to the Company's supervisors.
The testimony of the Grievant is also somewhat inconsistent.... It would then seem that this testimony is not very credible and is probably motivated, in part, to establish a reason other than sleeping (which carries a penalty of automatic discharge) for the Grievant's conduct on September 24, 1988.
The Union in its brief, has argued that the burden of proof is upon the Company to show that the Grievant was sleeping on the job. The Union argues that the Company has failed in its burden. For the reasons herein stated above I disagree, and I find that the Grievant was sleeping on the job sometime after noon on September 24, 1988.
This brings me to the core issue of this case, namely, whether the Company had "cause" to discharge the Grievant for sleeping on the job on September 24, 1988. In support of "cause" the Company has relied upon its Disciplinary Action Policy and Work Rules which provides under Schedule "B" for the automatic termination of employment for various violations including sleeping on the job....
* * * * * *
This brings me to the consideration of whether or not the Company contributed to the physical condition of the Grievant that led to his "sleeping on the job" violation and ultimately to his termination. The Grievant testified that he was often working seven days a week and up to twelve hours a day for six of those seven days for several months prior to his termination. His Shop Steward also testified that he seemed to be working long weeks and long hours. The Grievant also testified that he did not have a helper working on his shift as did the utility men on the other two shifts. Once again, his Shop Steward testified to that effect. The Company, on the other hand, concedes that the Grievant often worked overtime but not as often as the Grievant testified to, that is, less than seven days a week and not as many as twelve hour days as he claimed.
* * * * * *
Despite the contradiction in testimony as to whether the Grievant worked five, six or seven days a week for several months or for a few months or whether he worked twelve hour days two or three times a week or as much as six times a week, I need not resolve this conflict in order to make my decision. The fact of the matter is that in the four weeks prior and up to the incident on September 24, 1988 the Grievant worked an excessive number of hours.... Based upon this evidence, I am drawn to the conclusion that the Company contributed to the Grievant's violation of the sleeping rule.
* * * * * *
Given the number of hours the Grievant worked as noted herein above, I believe *1266 that it was almost inevitable, that during the slack time following the electrical outage at the Company's plant, where the Grievant had either little or nothing to do while waiting for the electricity to come back on, that he would fall asleep.
The Union states in its brief "where an employee is guilty of wrongdoing but management is also at fault in some regard and connection with the employee's conduct, the penalty can be set aside." The Union then goes on to cite two cases supporting this proposition. One of these cases involved fighting with a supervisor, who may have provoked the fight or at least did nothing to prevent it and the other deals with a supervisor giving the employee sketchy instructions which ultimately caused serious damage to the Company's equipment. Likewise, cases noted by Elkouri and Elkouri, in their Third Edition of How Arbitration Works at page 647 and their Fourth Edition at page 688 deal with similar situations but not like the one we have in the instant case. However, I agree with the principle involved and am persuaded to reduce the penalty in the instant case.
I have also noted that the Company has argued that an arbitrator, in reviewing disciplinary penalties, must not substitute his judgment and discretion for that of management citing Stockham Pipe Fittings Company, 1 LA 160, 162 (McCoy 1945). However, even arbitrator McCoy conditioned this precept by stating:
"The only circumstances under which a penalty imposed by management can be rightfully set aside by an arbitrator are those where discrimination, unfairness, or capricious and arbitrary action are provedin other words, where there has been abuse of discretion."
The Company has published its rule regarding sleeping on the job. On at least seven occasions, both before and after the termination of the Grievant, the Company applied its penalty of termination for sleeping on the job. As far as I know, the Union has not protested the rule as being unreasonable. On the other hand the Company has not met its burden of proof in persuading me that this instant case is similar to any one of the other seven cases where an employee was terminated. Therefore, while I am inclined to reduce the penalty in this case, I am not making a finding that the Company's Work Rule on sleeping is unreasonable. Thus, based upon my previous finding that the Company's scheduling of the Grievant led to the incident on September 24, 1988 of his sleeping on the job, I find that the Company arbitrarily, capriciously and unfairly discharged the Grievant and this constituted an abuse of discretion on the part of the Company. However, I do not find the charge racially motivated. I do not find the Grievant, though, totally blameless in the matter in that he did not utilize all the means available to him to either remove himself from this oppressive shift or seek to have his work weeks and work hours decreased or even just take an unexcused absence on the date in question and then grieve it. Furthermore, his lack of candor throughout the entire grievance procedure does nothing to mitigate his offense. Therefore, some discipline is appropriate.
VII. AWARD
The grievance is sustained in part and denied in part.
The Grievant is found to have breached the Disciplinary Action Policy and Work Rule set out in this award and is suspended for thirty (30) days without pay. With the exception of the thirty (30) days, he shall be reinstated, receive full back pay (forty hours per weekstraight time) and all benefits to which he would otherwise be entitled, less employment payments and earnings made during that period after his suspension.
The standards for reviewing the decision of an arbitrator are well-settled. Courts have no authority to review the merits of the underlying controversy. If the arbitrator's award draws its essence from the collective bargaining agreement, then it *1267 must be enforced. Vulcan-Hart Corp. v. Stove, Furnace & Allied Appliance Workers, 671 F.2d 1182, 1184 (8th Cir.1982), citing United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).
Because it is the arbitrator's decision for which the parties have bargained, exceptions to this general rule of non-reviewability are narrow. Nonetheless, a court's deference to arbitration awards is not unlimited. "[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement." United Steelworkers, 363 U.S. at 597, 80 S.Ct. at 1361. Thus, where an arbitrator has failed to fulfill his contractual obligation, resulting in an award that does not draw its essence from the agreement, courts have no choice but to refuse to enforce the arbitrator's award. Trailways Lines, Inc. v. Trailways, Inc., 807 F.2d 1416, 1421 (8th Cir.1986); St. Louis Theatrical Co. v. St. Louis Theatrical Brotherhood, 715 F.2d 405, 407 (8th Cir.1983).
The question of interpretation of the collective bargaining agreement is a question for the arbitrator. If the agreement is ambiguous and susceptible of more than one interpretation, the arbitrator's construction of that ambiguity is binding on the parties and the courts. St. Louis Theatrical Co. v. St. Louis Theatrical Brotherhood, 543 F.Supp. 1, 2 (E.D.Mo. 1981), aff'd 715 F.2d 405 (8th Cir.1983). If, however, it "can be said with positive assurance that the contract is not susceptible of the arbitrator's interpretation, the award does not draw its essence from the collective bargaining agreement." Id.
The authority most directly on point is the Eighth Circuit Court of Appeals decision of St. Louis Theatrical, supra. In St. Louis Theatrical, the collective bargaining agreement provided that employees shall not participate in the cessation of work for any reason whatsoever. The Agreement further provided that any employee violating this provision may be disciplined or discharged and shall have no recourse to any other provisions of this Agreement except as to the fact of participation. Id. at 408. The Court stated:
Under this agreement the arbitrator's authority is narrow. The arbitrator must determine whether the grievant did, in fact, participate in a prohibited activity. In the case at bar, the arbitrator found that "[McCarthy] participated in [the] work stoppage by the overt act of turning on the house lights and * * * must, therefore, be subject to discipline." Having found discipline justified, the arbitrator went further and concluded that discharge was an excessive penalty for the misconduct. In so doing, he exceeded his authority.
* * * * * *
In the instant case, the arbitrator's award is not the result of his interpretation of the agreement within the context of a specific set of facts. Nowhere does the agreement give the arbitrator the authority to determine the fairness or equity of the company's discipline of employees who engage in work stoppages or other prohibitive activities. Moreover, there are no tensions between sections inherent in the agreement and no ambiguities within the sections. The agreement is not susceptible to any construction beyond its plain meaning.
Although "[t]here is a significant distinction to be recognized between the opinion of an arbitrator and the award he actually renders," Resilient Floor and Decorative Covering Workers Local Union 1179 v. Welco Manufacturing Co., 542 F.2d 1029, 1031 (8th Cir.1976), we observe that the arbitrator's opinion reflected the arbitrator's efforts to balance the equities of the situation, rather than to interpret and apply the agreement. Thus, in his opinion, the arbitrator stated:
Where an employee is guilty of wrongdoing but management is also at fault in some respects in connection with the employee's conduct, the Arbitrator *1268 may be persuaded to reduce or set aside the penalty assessed by management. It is felt that the President of the Company contributed to this situation by his actions relative to the distribution of the payroll and by not having previously taken steps to make certain that the checks would be accurate. His actions are not excused because his accountant was in Kansas City and the computer at the bank which prepared the checks on his behalf was not programmed to issue checks where there was so much as one thousand * * * dollars overtime on six checks. Pierson, an experienced producer, knew or should have anticipated this problem.
While the Company's form of discipline may have been severe, this fact is neither the arbitrator's nor our concern. The arbitrator does not point to, nor can we find, any provision of the agreement that grants the arbitrator the authority to balance the equities of the company's discipline for an employee who engaged in a work stoppage.
In sum, the Eighth Circuit concluded that under the contract, the arbitrator's authority extended only to finding whether McCarthy engaged in a work stoppage. The Court affirmed the decision of the district court holding that the arbitrator's award failed to draw its essence from the collective bargaining agreement.
In accordance with St. Louis Theatrical, supra, this Court finds that summary judgment should be entered in favor of Contico International. Under the Collective Bargaining Agreement at issue, the Arbitrator's authority is very narrow. His function is judicial rather than legislative. He has no power to add to, subtract from, ignore or modify in any way the terms or conditions of the Agreement. Article 7 of the Agreement expressly provides that the Company has the right to discharge employees for cause. Article 23 states that the Company has the right to establish work rules consistent with the Agreement. Of importance is disciplinary policy work rule 18 which provides that sleeping on the job is cause for termination of employment. The penalty was set forth in the Disciplinary Action Policy, and accepted by the Union. Significantly, no one, including the Arbitrator, challenges the reasonableness of the rule and penalty.
Arbitrator Cipolla was limited by the Agreement to interpreting issues directly involved in this case. The only issue upon which there could be any debate is whether the Grievant slept during work hours. If in fact the Grievant did sleep, then the Agreement and Work Policy are very clear that the Grievant should automatically be discharged from employment. The Agreement is not itself ambiguous or susceptible of any interpretation other than this. Thus, the Arbitrator exceeded his authority when he interpreted an agreement which was not ambiguous.
The Arbitrator also exceeded his authority when he used the "arbitrary, discriminatory and capricious" standard in reaching his decision. The Collective Bargaining Agreement does not restrict the employer's right to discharge an employee by an "arbitrary, discriminatory, or capricious" standard. Thus, Cipolla was in error when he relied upon this standard to strike down the Company's decision to terminate the Grievant. St. Louis Theatrical, 543 F.Supp. at 3. Although, the Agreement does limit the employer's right to discharge an offending employee for cause, the Company identified numerous actions which constitute cause, for which sleeping during work hours was one.
Based on the evidence before him, the Arbitrator found that Grievant Clay had been asleep on the job. Thus, the Arbitrator found the Grievant should be subject to discipline. The only discipline available under the Disciplinary Action Policy and Work Rules was automatic termination. Therefore, when the Arbitrator found that automatic discharge was an excessive penalty due to the employer's contribution to the grievant's misconduct, the Arbitrator again exceeded his authority. Arbitrator Cipolla determined the fairness or equity of the Company's discipline of employees. As in St. Louis Theatrical, *1269 however, "[t]he arbitrator does not point to, nor can we find, any provision of the agreement that grants the arbitrator the authority to balance the equities of the company's discipline for an employee who engaged in a [prohibited activity]." St. Louis Theatrical, 715 F.2d at 409.
In sum, Arbitrator Cipolla exceeded his authority when he altered, added to or modified the terms of the agreement by interpreting an agreement that was not ambiguous, by applying a standard of review that was not bargained for, and by allowing for a balancing of the equities. St. Louis Theatrical, 543 F.Supp. at 2. It can be said with "positive assurance that the contract is not susceptible of the arbitrator's interpretation," and, therefore, the award does not draw its essence from the agreement. Id. Because the Arbitrator has failed to fulfill his contractual obligation resulting in an award that does not draw its essence from the agreement, this Court has no choice but to refuse to enforce the Arbitrator's award. Trailways, 807 F.2d at 1421; St. Louis Theatrical, 715 F.2d at 407. Therefore, the Court will grant plaintiff's motion for summary judgment and deny defendant's motion for summary judgment. Judgment will be entered accordingly.

JUDGMENT
In accordance with the accompanying memorandum,
IT IS HEREBY ORDERED that plaintiff's motion for summary judgment is GRANTED.
IT IS FURTHER ORDERED that defendant's motion for summary judgment is DENIED.
IT IS FINALLY ORDERED, ADJUDGED and DECREED that judgment is entered in favor of plaintiff and against defendant. The arbitrator's award is invalid and is hereby vacated to the extent it resolves any issue other than the issue of whether the grievant was sleeping during work hours.